## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**A AND N MORTGAGE SERVICES, INC.**
1945 N. Elston Avenue
Chicago, Illinois 60642

    Plaintiff,

v.

**BRADLEY BODEN**
1816 N. Fairfield Ave.
Chicago, IL 60647

**CMG MORTGAGE, INC.**
d/b/a CMG Financial
3160 Crow Canyon Rd., Suite 400
San Ramon, CA 94583

c/o Registered Agents Inc.
1401 21st Street, Ste. R
Sacramento, CA 95811

**SELECT LENDING SERVICES, LLC**
15400 Boones Ferry Rd.
Lake Oswego, OR 97035

c/o Registered Agents Inc.
2355 State St., Ste 101
Salem, OR 97301

and

**KRISTEN COONEY-MCCARTHY**
9225 S. Troy Road
Evergreen Park, IL 60805

    Defendants.

Civil Action No. 1:24-cv-05963

**JURY TRIAL DEMAND**

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff A and N Mortgage Services, Inc. ("A&N" or "Plaintiff"), by and through its undersigned attorneys, hereby alleges as follows for its Verified Complaint against Defendants Bradley Boden ("Boden"), CMG Mortgage, Inc. dba CMG Financial ("CMG"), Select Lending Services, LLC ("Select"), and Kristen Cooney-McCarthy ("Cooney-McCarthy" and together with Boden, CMG, and Select, the "Defendants"):

## <u>NATURE OF THE ACTION</u>

1.      This action is the result of Defendants' misappropriation, disclosure, and unauthorized use of A&N's confidential information; violation of the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, *et seq.*; violation of the Illinois Trade Secrets Act, 765 ILCS 1065/1 *et seq.*; tortious interference with A&N's business relationships; unfair competition with A&N; and replevin of A&N's property.[1]

2.      After eighteen years of working under the wing of A&N's principal Neena Vlamis ("Vlamis"), Boden resigned from A&N on January 5, 2024 to work for its direct competitor, CMG. Boden is now disclosing and using A&N's confidential information to generate mortgage loan sales for his and CMG's pecuniary gain, causing A&N significant irreparable harm and monetary damages.  Boden's actions also violate the non-solicitation provision contained in his A&N employment agreement.

3.      In May 2023, Boden began accessing A&N computer systems without authorization to surreptitiously send confidential A&N customer information from his A&N-provided company computer to his personal email account.  Since January 5, 2024—and even before he resigned from A&N—Boden has utilized this information at CMG, thereby allowing

---

[1] As discussed below, Boden is bound by his employment and confidentiality agreement with A&N. Boden's breach of these agreements is covered by an arbitration clause and, as such, A&N has filed an Arbitration action in addition to this lawsuit.

CMG to enjoy the unauthorized use of A&N's confidential information. Boden's malfeasance is further reflected in his successful solicitation of several A&N employees to join him at CMG and Select, an affiliate of CMG.

4. For example, on June 13, 2024, a third-party business partner of A&N advised A&N that Boden disparaged A&N and Vlamis in an effort to gain its business. Specifically, Boden told A&N's business partner that he left A&N because "he didn't receive things he was promised." The business partner later advised Vlamis that it would no longer do business with A&N because of Boden's disparaging remarks.

5. Boden also took a referral partner of A&N to CMG and misappropriated a successful and lucrative program created by A&N to CMG.

6. CMG and Select are liable for misappropriation of A&N's confidential information including, but not limited to, the names, email addresses, and other information of A&N customers because CMG and Select knew that Boden and Cooney-McCarthy were stealing A&N's data for use at CMG and Select.

7. As such, CMG and Select intentionally used (and are using) A&N's confidential information to tortiously interfere with A&N's business relationships with its current and former customers, thereby causing harm and damage to A&N.

8. In fact, the same day Boden resigned, Cooney-McCarthy—another long-term A&N employee—resigned from A&N to join Boden at CMG. Before she resigned, Cooney-McCarthy accessed A&N computer systems without authorization to misappropriate confidential information of A&N. Cooney-McCarthy has since disclosed A&N's confidential information to third-parties including, but not limited to, CMG and Select.

9.      Despite demands from A&N to cease and desist its use of A&N's confidential information, Defendants have refused to do so.  In fact, CMG and Select have stonewalled A&N in its efforts to enforce its rights with respect to its confidential information and agreements with its former employees.

10.     As a result, A&N now brings suit against Defendants.

## THE PARTIES

11.     Plaintiff A and N Mortgage Services, Inc. is an Illinois corporation with its principal place of business located in Chicago, Illinois.  A&N is a licensed mortgage banker and broker.

12.     Defendant Bradley Boden is an Illinois resident and a licensed mortgage loan originator in Illinois and other states.  Boden worked for A&N the entirety of his mortgage banking career, almost twenty years, until he abruptly left on January 5, 2024 to work for A&N competitor CMG.

13.     Defendant CMG Mortgage, Inc. dba CMG Financial is a California corporation with its principal place of business located in San Ramon, California.  CMG holds itself out as a mortgage lender that offers and underwrites home loans.  CMG offers and underwrites loans in Illinois.  The services that CMG provides are in competition with those of A&N; CMG and A&N compete in the same market for the same customers.

14.     Defendant Select Lending Services, LLC is an Oregon limited liability company with its principal place of business located in Lake Oswego, Oregon.  Select is a licensed mortgage banker and broker authorized to and does conduct business in Illinois.  Select holds itself out as a mortgage lender that offers and underwrites home loans.  Select offers and underwrites loans in Illinois.  The services that Select provides are in competition with those of A&N; Select and A&N compete in the same market for the same customers.

15.     Defendant Kristen Cooney-McCarthy is an Illinois resident.  She is licensed in Illinois as a mortgage loan originator.  Like Boden, Cooney-McCarthy resigned from A&N to work at A&N competitor CMG.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this dispute, pursuant to 28 U.S.C. § 1331, because A&N's claims against Boden and Cooney-McCarthy under the Federal Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.*, raise a Federal question.  A&N's remaining claims fall within the Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, because the claims are so related to the Federal question that they form part of the same case or controversy.

17.     This court has personal jurisdiction over Defendant Boden because he is a resident of Illinois.

18.     This court has personal jurisdiction over Defendant Cooney-McCarthy because she is a resident of Illinois.

19.     The Court also has personal jurisdiction over Defendants Boden and Cooney-McCarthy pursuant to the venue provision in the A and N Mortgage Services Employee Handbook (the "Employee Handbook"), which states in pertinent part:

> The terms of the offer letters, employment contracts, this handbook and all other executed agreements in place between A&N and employees and the resolution of any disputes as to the meaning, effect, performance, or validity of these documents or arising out of, related to, or in any way connected with, these documents, employment, or any other relationship between an employee and A&N will be governed by Illinois law, excluding laws relating to conflicts or choice of law. Employees and A&N submit to the exclusive personal jurisdiction of the federal and state courts located in the state of Illinois in connection with any dispute or any claim related to any dispute and such resolution shall be determined by bench trial, with the employee and A&N electing to waive their right to trial by jury.

A true and accurate copy of the Employee Handbook is attached hereto as **Exhibit 1**. (*See* Ex. 1, 16-17.)[2]

20.     This Court has personal jurisdiction over Defendant CMG because CMG transacts business within the Northern District of Illinois, committed a tortious act within the Northern District of Illinois, and purposefully caused tortious injury within the Northern District of Illinois.

21.     This Court has personal jurisdiction over Defendant Select because Select transacts business within the Northern District of Illinois, committed a tortious act within the Northern District of Illinois, and purposefully caused tortious injury within the Northern District of Illinois.

22.     This Court also has jurisdiction over all Defendants because the property stolen by Defendants was, and based upon information and belief still is, located in the Northern District of Illinois.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events giving rise to the claims in this Complaint occurred in this District and, as discussed above, Defendants are subject to the Court's personal jurisdiction in this District.

## **FACTUAL BACKGROUND**

24.     A&N is a mortgage banker and broker that works with a broad mix of customers, including individuals, families, business owners, non-profits, and corporate institutions.

25.     A&N employs personnel to sell and provide mortgages to customers and manage relationships with those customers. A&N prides itself in maintaining and expanding relationships with existing customers and strategic partners, attracting and developing new customers, and developing future customer opportunities and strategic partnerships.

---

[2] Exhibit A to Exhibit 1 is Boden's signed version of the Employee Handbook. Exhibit B to Exhibit 1 is Cooney-McCarthy's signed version of the Employee Handbook.

26.     A&N expends considerable time, money, and effort to develop and maintain its customer relationships, sales and marketing strategies, business development plans and corporate goodwill to grow its business and provide its mortgage banking and brokerage services to its customers.

27.     As a result of A&N's efforts, many customers have been A&N customers for multiple years and were reasonably expected to continue as customers into the future.

**A.     A&N Hires Boden as a Loan Officer**

28.     On December 19, 2005, A&N hired Boden as a Loan Officer.  A true and accurate copy of the Loan Officer Employment Agreement is attached hereto as **Exhibit 2** (the "Boden Agreement").

29.     As a Loan Officer, Boden had daily access to A&N's confidential and proprietary business information, including, but not limited to, marketing techniques, trade secret information, loan applications, loan files, loan file documents, accounts, customer or customer information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product information, strategic business plans, business methodology and processes, and costs and pricing policies.  ("A&N Confidential Information").

30.     A&N took steps to protect its confidential and proprietary business information by requiring Boden to sign the Boden Agreement, which contained a confidentiality provision as well as a non-solicitation restrictive covenant.  The Boden Agreement provides in pertinent part:

> **Section 8.     Confidential and Proprietary Information.**
>
> (a)     Employee understands, acknowledges and agrees that all information and/or documents disclosed or provided to Employee by A&N, or developed or created by Employee during the term of his or her employment with A&N, including, but not limited to, loan applications, loan files, loan file documents, accounts, customer or client information, contracts or agreements, data, records, appraisals, financial information, software, customer lists, prospective customer leads or lists, product

information, strategic business plans, business methodology and processes, and costs and pricing policies (hereinafter "Information") are, shall become, and shall at all times remain, the sole and exclusive property of A&N. Employee agrees to use the Information only in the course of Employee's employment with A&N. Employee agrees to keep the Information confidential and not use or disclose the Information to any third party, except to the extent that disclosure of the Information is reasonably necessary in order for Employee to perform Employee's responsibilities as a Loan Officer for A&N.

(b)     Employee agrees that upon termination of Employee's employment with A&N, whether such termination is voluntary or involuntary, with or without cause, any and all loan applications, loan files, loan file documents, customer lists, prospective customer leads or lists, computer disks or other media for the storage of data, and all other documents or materials containing any of the Information in the possession, custody, or control of Employee shall immediately be delivered to A&N. Employee further agrees that upon termination of Employee's employment with A&N, Employee's copying, duplicating, physical taking or removal from A&N's premises of any loan applications, loan files, loan file documents, storage of data containing any of the Information shall be a material breach of this Agreement. Likewise, Employee's failure to immediately deliver to A&N any and all loan applications, loan files, loan file documents, customer lists, prospective customer leads or lists, or any documents, computer disks or other storage media containing any of the Information in the possession or control of Employee upon termination of Employee's employment with A&N shall be a material breach of this Agreement.

(c)     Employee acknowledges, understands and agrees that the Information is of substantial value to A&N and that in the event of the use or disclosure of such Information in breach of this Agreement the resulting damages will be difficult, if not impossible, to determine and that money damages will be inadequate. Therefore, without prejudice to the rights and remedies otherwise available to A&N, and in addition to such rights and remedies, A&N shall be entitled to equitable relief by way of injunction if Employee breaches or threatens to breach any of the provisions of this Agreement relating to Employee's use or disclosure of any of the Information.

(Ex. 2, § 8).

31.     The Boden Agreement further barred Boden from soliciting A&N employees for a period of twelve months after the end of his employment with A&N:

**Section 9.     Non-Solicitation.**

> Employee agrees that: (a) during the term of Employee's employment with A&N, and thereafter, Employee shall not, directly or indirectly, attempt to divert any of the business of A&N, or any business which A&N has a reasonable expectation of obtaining, by soliciting, contacting, or communicating with any customers and/or potential customers of A&N which have been derived from leads and/or lists developed and provided to Employee by A&N or created or developed by Employee during Employee's employment with A&N; (b) **for a period of (1) year after termination of Employee's employment with A&N**, whether such termination is voluntary or involuntary, with or without cause, not to, **directly, or indirectly, influence or advise any other person to employ or solicit for employment anyone who is an employee of A&N as the date of termination** of Employee's employment; and (c) for a period of one (1) year after termination of Employee's employment with A&N, whether such termination is voluntary or involuntary, with or without cause, **not to, directly or indirectly, influence or advise any person who is an employee of A&N as of the date of termination** of Employee's employment with A&N to leave the employment of A&N.

(*Id*., at § 9. (emphasis added)).  Section 9 of the Boden Agreement also obligated Boden to not divert "any of the business of" "customers or potential customers of A&N."  (*Id.*)

32.     In September 2023, as part of a companywide campaign, Boden executed a Mortgage Consultant Employment Agreement.  A true and accurate copy of the Mortgage Consultant Employment Agreement is attached hereto as **Exhibit 3** (the "Mortgage Consultant Employment Agreement").[3]

33.     Similar to the Boden Agreement, the General Provisions prohibited Boden from divulging A&N Confidential Information upon termination of his employment:

**Article IV.B. Non-Disclosure.**

> As a consequence of Mortgage Consultant's acquisition or anticipated acquisition of Confidential Material, Mortgage Consultant shall occupy a position of trust and confidence with respect to the affairs and business of

---

[3] The Mortgage Consultant Employment Agreement incorporates by reference the terms set forth in its Exhibits A and B.  Exhibit A of the Mortgage Consultant Employment Agreement specified Boden's compensation.  Exhibit B of the Mortgage Consultant Employment Agreement contained General Provisions of employment with A&N (the "General Provisions").

Company. In view of the foregoing and of the consideration to be provided to Mortgage Consultant, Mortgage Consultant agrees that it is reasonable and necessary that Mortgage Consultant make each of the following covenants:

i. At any time during the term of this Agreement and thereafter, except as required by law, Mortgage Consultant shall not disclosure Confidential Material to any person or entity, either inside or outside of Company, other than as necessary in carrying out the business of Mortgage Consultant, without first obtaining Company's prior written consent (unless such disclosure is compelled pursuant to court orders or subpoena, and at which time Mortgage Consultant shall give immediate notice of such proceedings to Company).

ii. At any time during the term of this Agreement and thereafter, Mortgage Consultant shall not use, copy or transfer Confidential Material other than as necessary in carrying out the business of Company, without first obtaining Company's prior written consent.

iii. Upon termination of this Agreement, Mortgage Consultant shall promptly deliver to Company (or its designee) all written materials, records, software and documents made by Mortgage Consultant or which came into his/her possession prior to or during the term of this Agreement, concerning the business and affairs of Company, including all materials containing Confidential Material.

(Ex. 3, Article IV.B.i-iii.)

34. The General Provisions also bar Boden from soliciting current A&N employees—or prior A&N employees who had left the company in the preceding six (6) months—for a period of twelve (12) months after the end of his employment with A&N, pursuant to the following:

**Article IV.C.i. Non-Solicitation.**

In order to protect and preserve Company's Confidential Materials, and Company's significant investment in developing its business, which investment Mortgage Consultant hereby acknowledges, **commencing as of the date hereof and for a period of one year following cessation of Mortgage Consultant's employment with Company** (the "Limited Period") Mortgage Consultant shall not, directly or indirectly, separately or in association with others, interfere, disrupt or damage Company's business by soliciting, recruiting, attempting to recruit, or causing or assisting in the recruitment or attempted recruitment of, any then-current employee of Company, or any individual who has served in such capacity at any time within the 6-month period immediately prior thereto, for employment with another person or entity.

(*Id.* at Article IV.C.i. (emphasis added))

35. The General Provisions also bar Boden from soliciting A&N customers that A&N previously processed and closed a loan with for a period of (a) twelve (12) months or (b) the period specified in the lender of investor requirements, pursuant to the following:

**Article IV.C.iii. Re-Solicitation of Borrowers.**

Mortgage Consultant hereby expressly acknowledges that the solicitation of, or the origination of a loan for, a consumer for whom a loan previously was processed and closed by Company may result in the imposition against Company of fines, penalties, reimbursements, indemnifications, damages and expenses ("Re-Solicitation Losses"). **Mortgage Consultant shall under no circumstances solicit any consumer for whom a loan previously was processed and closed by Company during the longer of (i) the twelve (12) month period following the date of such loan closing, and (ii) such period as may be specified in the applicable Requirements of the pertinent lender or investor with respect to the loan,** if such solicitation or loan closing would result in a Re-Solicitation Loss to Company. Unless otherwise prohibited by applicable law, in the event of any breach of this Section, loans subject to any Re-Solicitation Losses would not be considered an Eligible Loan as defined in the Agreement.

(*Id.* at Article IV.C.iii. (emphasis added))

36. Boden acknowledged that the breach of the provisions in Article IV would cause A&N irreparable harm.

**Article IV.E. Irreparable Harm; Injunctive Relief.**

Company and Mortgage Consultant recognize and acknowledge that in the event of any breach of any provision of this Article, irreparable harm will be suffered by Company and that any remedy available at law will be inadequate and **Company and Mortgage Consultant do, therefore, agree that in such event Company shall be entitled to injunctive relief in any court of competent jurisdiction against Mortgage Consultant and against any other person or entity involved in or connected with such breach**, without necessity of posting any bond, cash or security against/for Mortgage Consultant or any individual or entity involved in or connected with such breach, which rights shall be in addition to such rights as Company may have for damages and in addition to such other remedies as the law or equity may provide. **For avoidance of doubt, any alternative dispute resolution provisions provided for in this Agreement shall not**

> **prevent the seeking of injunctive or other similar relief provided for in
> this Article.**

((*Id.* at Article IV.E. (emphasis added))

## B.   A&N Hires Cooney-McCarthy

37.     On or about April 3, 2009, A&N hired Cooney-McCarthy as a Loan Processor.  On

or about May 21, 2013, Cooney-McCarthy entered into a Confidentiality Agreement with A&N.

A true and accurate copy of the Confidentiality Agreement is attached hereto as **Exhibit 4** (the

"Cooney-McCarthy Confidentiality Agreement").

38.     The Cooney-McCarthy Confidentiality Agreement similarly obligated Cooney-

McCarthy to not use A&N's Confidential Information for any purpose other than in connection

with her employment with A&N:

> Kristen Cooney agrees that the Confidential Information is to be
> considered confidential to A & N and Kristen Cooney shall hold the
> same in confidence, shall not use the Confidential Information other
> than for the purposes of its business with A & N, and shall limit
> disclosure of Confidential Information within its own organization
> to its directors, officers, partners, members and/or employees having
> a need to know and shall not disclose Confidential Information to
> any third party (whether an individual, corporation, or other entity)
> without the prior written consent of A & N unless required to do so
> by law.

(*Id.* at ¶ 2.)

39.     Further, the Cooney-McCarthy Confidentiality Agreement obligated Cooney-

McCarthy to not share A&N's Confidential Information: "Any Confidential Information furnished

in tangible form to Kristen Cooney shall not be duplicated or altered without written consent from

A&N."  (*Id.* at ¶ 3.)

40.     While employed at A&N, Boden and Cooney-McCarthy had daily access to A&N

Confidential Information, including, but not limited to, marketing techniques and customer

information.

41.    A&N took steps to protect A&N Confidential Information by requiring Cooney-McCarthy to sign the Cooney-McCarthy Confidentiality Agreement, which contained an express confidentiality provision as well as a non-solicitation restrictive covenant of three years.  (*Id.* at ¶¶ 2; 4.)

## C.  A&N's Protection Of Its Confidential Information

42.    While employed at A&N, Defendants had daily access to A&N Confidential Information, including lists of A&N's customers, their email addresses and phone numbers.

43.    A&N also implemented and promulgated the Employee Handbook, which set parameters for the use and disclosure of A&N Confidential Information.

44.    A&N Confidential Information is kept secure at A&N.  To access customer lists and other Confidential Information, an employee must log onto their company-owned computer using their password.

45.    A&N has undertaken considerable expense and effort to create A&N Confidential Information and to keep A&N Confidential Information secure and secret.  A&N employees are required to enter into Confidentiality and Non-Solicitation Agreements, like the Employee Handbook, Boden Agreement, Mortgage Consultant Employment Agreement, and Cooney-McCarthy Confidentiality Agreement, in exchange for employment and access to A&N Confidential Information.

46.    As such neither Boden, nor Cooney-McCarthy, had access to A&N Confidential Information before joining A&N and only received access to A&N Confidential Information in exchange for agreeing to the above duties and obligations of protecting A&N Confidential Information.

### D. Boden and Cooney-McCarthy Download A&N Confidential Information While Planning to Depart A&N for CMG

47. On May 23, 2023, without permission or authorization from A&N, Boden ported his A&N issued mobile phone number and converted the number to a personal account. Upon information and belief, Boden did so to begin his process of misappropriating A&N Confidential Information and poaching its employees.

48. On August 15, 2023, Boden emailed a copy of the A&N 2016-2022 customer database ("customer database") from his A&N email address to his personal email address.

49. The customer database is A&N Confidential Information and includes the following Confidential Information on A&N customers:

      a. Name;
      b. Phone numbers;
      c. E-mail address;
      d. Loan amount;
      e. Loan type; and
      f. Date of origination.

50. The General Provisions of the Mortgage Consultant Employment Agreement specify that Boden "at any time during the term of this Agreement and thereafter, Mortgage Consultant shall not use, copy or transfer Confidential Material other than as necessary in carrying out the business of Company, without first obtaining Company's prior written consent." (Ex. 3, Article IV.B.ii.)

51. Boden had no legitimate business reason for sending the customer database to his personal email account.

52. Boden never asked for, nor did he receive, consent from A&N to send the customer database to his personal email account.

53.     Accordingly, Boden sending the customer database from his A&N email address to his personal email address is a direct violation of the Mortgage Consultant Employment Agreement.

54.     Unbeknownst to A&N, Boden attended Zoom meeting with several CMG employees on December 1, 2023. Upon information and belief, this meeting was an interview with CMG. Accordingly, Boden attended an employment interview with CMG on A&N property using A&N's subscription services, all while purporting to work for A&N. Boden likely discussed soliciting A&N employees to CMG during this meeting.

55.     A few days later, on or about December 13, 2023, Boden attended dinner with Venera Cameron ("Cameron"), a referral partner of A&N. A&N developed a unique financing program aimed at assisting customers who have C08 Visa holders and limited credit tradelines. Often, the borrowers were self-employed. This program was confidential and proprietary to A&N. Cameron participated in this confidential and proprietary program.

56.     Boden later took Cameron to CMG and misappropriated this successful and lucrative program designed by A&N.

57.     Two days after meeting with Cameron, on or about December 15, 2023, Boden met again with several CMG employees on Zoom. Upon information and belief, this meeting was another employment interview that Boden took with CMG while working at A&N and using A&N's property, all while purporting to work at A&N. Further, Boden likely discussed soliciting A&N employees to CMG during this meeting.

58.     On December 20, 2023, Boden downloaded his paystubs and W2 from A&N's payroll provider, Paylocity. Boden sent these documents to CMG's Division Sales Manager, Michael Harrison ("Harrison").

59.     That same day, Cooney-McCarthey e-mailed her A&N income documents to Boden's wife, who forwarded those documents to Boden. Boden then used an A&N laptop to e-mail Cooney-McCarthy's income documents to Harrison and CMG.

60.     Boden would only have sent A&N compensation information to CMG if he had already accepted an offer of employment from CMG as of December 20, 2023 or was planning to imminently accept an offer of employment from CMG.

61.     Boden's email of Cooney-McCarthey's A&N compensation information to CMG demonstrates that Boden had already solicited Cooney-McCarthey to join him at CMG, a direct violation of the Mortgage Consulting Employment Agreement.

62.     Importantly, as of December 20, 2023, Boden was still in possession of the customer database he sent to his personal email address.

63.     On December 28, 2023, Boden requested a "price check" with different scenarios from CMG, utilizing four scenarios from A&N's system. Boden compared pricing of mortgages through A&N and CMG. Boden used this "price check" information to solicit A&N customers to CMG.

64.     Thus, and upon information and belief, Boden was working for CMG, and sharing A&N Confidential Information with CMG, despite not yet terminating his relationship with A&N.

65.     Based upon information and belief, CMG knew that Boden was still working for A&N when he was sharing A&N Confidential Information with CMG.

66.     Based upon information and belief, CMG knew that it was not to receive, review, access, or use any A&N Confidential Information while Boden was an A&N employee or after Boden was an A&N employee.

67.     Nevertheless, and based upon information and belief, CMG received, reviewed, accessed, and used A&N Confidential Information while Boden was an A&N employee and after Boden was an A&N employee.

### E. Boden and Cooney-McCarthy Resign And Immediately Violate The Duties and Obligations They Owe A&N

68.     On or about January 5, 2024, Cooney-McCarthy and Boden resigned from A&N. Boden called A&N and resigned. Boden confirmed that he was leaving A&N to join CMG. Boden also confirmed that Cooney-McCarthy and another A&N mortgage consultant, Jack Matthias ("Matthias"), were resigning from A&N to work with him at CMG; effectively, Boden resigned on behalf of himself, Cooney-McCarthy, and Matthias. Boden further admitted that he provided CMG with the contact information of other A&N employees in addition to Cooney-McCarthy and Matthias.

69.     Hence, Boden admitted to violating the Mortgage Consulting Employment Agreement and sharing A&N Confidential Information with CMG on January 5, 2024.

70.     Cooney-McCarthy followed up with a written resignation letter via e-mail that same day. Cooney-McCarthy offered to work through January 19 to "finish a majority of the files [she had] in process."

71.     One day after submitting her resignation, Cooney-McCarthy downloaded A&N Confidential Information. Specifically, she downloaded customer information and profiles for over twenty A&N customers.

72.     Cooney-McCarthy had no legitimate business reason for downloading A&N Confidential Information on January 6, 2024, especially as she had already informed A&N that she was resigning from A&N and going to CMG.

73.     Upon learning that Cooney-McCarthy downloaded confidential information, A&N immediately terminated Cooney-McCarthy and removed her access to A&N's Confidential Information and databases.

74.     Upon information and belief, Cooney-McCarthy provided Boden and CMG with the downloaded A&N Confidential Information in order to have A&N customers pre-approved at CMG.

75.     Cooney-McCarthy's downloading of A&N Confidential Information was a direct violation of the Cooney-McCarthy Confidentiality Agreement, which required that, "any Confidential Information furnished in tangible form to Kristen Cooney shall not be duplicated or altered without written consent from A&N."  (Ex. 4, ¶ 3.)

76.     Following Boden and Cooney-McCarthy's departure, several A&N customers terminated their relationship with A&N to join Boden and Cooney-McCarthy at CMG.

77.     Upon information and belief, Boden and Cooney-McCarthy used A&N Confidential Information, including the downloaded customer database, customer information, and customer profiles, specifically those downloaded by Boden on August 15, 2023 and by Cooney on January 6, 2024, to solicit A&N customers to join CMG in violation of the Employee Handbook, Boden Agreement, Mortgage Consultant Employment Agreement, and Cooney-McCarthy Confidentiality Agreement.

78.     On January 7, 2024, Boden went into A&N's office to collect his belongings. During his visit, Boden altered the settings on his A&N office phone to forward calls to his personal cell phone.  Put differently, Boden surreptitiously directed A&N's calls to his CMG phone line in violation of the Employee Handbook, Boden Agreement, Mortgage Consultant Employment Agreement.

79.     As early as January 9, 2024, Boden began closing loans on behalf of CMG. Notably, Boden, who had worked at A&N for nearly 20 years, did not have his own customers.

80.     The only way Boden could have borrowers applying for loans at CMG so quickly after leaving A&N was if he used the stolen A&N Confidential Information.

81.     On January 11, 2024, Boden changed the log in to A&N's Zillow account to his CMG email address.

82.     Boden did not inform A&N that he would be changing the Zillow account information.  Nor did Boden have permission from A&N to change the Zillow account information.

83.     By changing the A&N Zillow account information to himself and CMG, Boden was able to divert leads and potential customers that A&N would be notified about through Zillow to Boden and CMG.

84.     Thus, by changing the A&N Zillow account information to himself and CMG, Boden was able to divert customer opportunities and business away from A&N and to himself and CMG.

85.     On January 12, 2024, Cooney-McCarthy sent an email to an A&N customer from her CMG email address advising that she was working on the customer's mortgage with Boden. Cooney-McCarthy copied her A&N email address in an attempt to give the customer the appearance that A&N remained involved in the transaction.

86.     Thus, Boden, Cooney-McCarthy, and CMG commandeered the customer from A&N by using A&N Confidential Information, including the name and email address of the customer, as well as A&N's knowledge of the customer's mortgage needs.

87.　Later in January and February, several A&N customers contacted A&N to state that Boden, using his CMG accounts, had solicited them and offered to provide services for them at CMG.

88.　For example, on February 9, 2024, a credit union that A&N had enjoyed a decades long relationship with notified A&N that Boden had been soliciting its members as a CMG employee.

89.　Shortly thereafter, a second credit union advised A&N that they would no longer do business with A&N and instead would be working with Boden and CMG.

**F.　Boden and Cooney-McCarthy Continue to Solicit CMG Employees to Join CMG**

90.　On May 20, 2024, Kiki Calumet ("Calumet"), Senior Executive Vice President at A&N, began changing many of her online accounts used to conduct business at A&N from her A&N email address to her personal email address.　On information and belief, Calumet changed these accounts to remove A&N customer data and other A&N Confidential Information in order to utilize A&N Confidential Information at CMG and Select.

91.　On June 11, 2024, Calumet began to copy A&N Confidential Information to a Google Sheet linked to her personal email address.

92.　Calumet was not authorized to send A&N Confidential Information, including the Confidential Information on the Google Sheet, to her personal email address.

93.　Calumet did not ask A&N for permission to, nor did she receive permission to, send A&N Confidential Information, including the Confidential Information on the Google Sheet, to her personal email address.

94.　The only reason for Calumet to send A&N Confidential Information, including the Confidential Information on the Google Sheet, to her personal email address was so she could use the Confidential Information to compete with A&N at CMG and Select.

95. On June 12, 2024, Calumet informed Vlamis that Boden had contacted her about her position at A&N and offered her a job at CMG. Boden informed her that if things "don't work out" at A&N, she would have a position at CMG and/or Select.

96. Harrison also repeatedly called Calumet about a potential position at CMG and/or Select.

97. The next day, June 13, 2024, Calumet notified Vlamis that she was resigning from A&N and joining CMG and Select.

### G. CMG and Select Directly Compete With A&N And Encouraged Boden And Cooney-McCarty To Violate Their Obligations to A&N

98. Upon information and belief, CMG and Select are affiliated with one another. For example, the Articles of Incorporation filed for Select in 2020 with the Oregon Secretary of State lists CMG as its Managing Member. Further, at least one landing page on Select's website references CMG. CMG owns Select and the two operate in a joint venture.

99. CMG and Select knew that Boden and Cooney-McCarthy were subject to restrictive covenants during and after their employment at A&N.

100. CMG and Select (1) encouraged Boden and Cooney-McCarthy to violate the restrictive covenants, or (2) deliberately turned a blind eye to Boden and Cooney-McCarthy violating the restrictive covenants.

101. CMG and Select knew that Boden and Cooney-McCarthy had confidential information obligations.

102. CMG and Select (1) encouraged Boden and Cooney-McCarthy to violate their confidentiality obligations, or (2) deliberately turned a blind eye to Boden and Cooney-McCarthy deliberately violating their confidential information obligations.

103. CMG and Select received A&N Confidential Information.

104.    CMG and Select knew that they were not supposed to receive or possess A&N Confidential Information.

105.    CMG and Select are in possession of A&N Confidential Information and are using A&N Confidential Information.

**H.  A&N Continues to Lose Business to CMG and Suffers Irreparable Harm**

106.    Defendants' actions have, upon information and belief, caused A&N customers to leave A&N to work with Boden and Cooney-McCarthy at CMG and Select.  A&N anticipates that additional A&N customers will continue to sever their relationships with A&N based on Boden, Cooney-McCarthy, CMG, and Select's actions.

107.    For example, on June 13, 2024, a third-party business partner of A&N advised Vlamis that Boden disparaged A&N and Vlamis.  Specifically, Boden told A&N's business partner that Boden left A&N because "he didn't receive things he was promised."  The business partner later advised Vlamis that it would no longer do business with A&N because of Boden's disparaging remarks.

108.    Despite requests from A&N to cease and desist, Defendants retain and refuse to return all A&N Confidential Information.

109.    Defendants' actions have caused, and will continue to cause, imminent irreparable harm to A&N.  Boden's solicitation of A&N customers threatens to destroy the goodwill A&N has developed with its customers.

110.    CMG continues to, upon information and belief, service A&N customer accounts that CMG obtained through its use of A&N Confidential Information.

111.    Boden's—and by extension, CMG and Select's—actions have irreparably harmed A&N.  The loss of its customer relationships has caused significant and irreparable harm to A&N.

112.    A&N has honored all its obligations in the Employee Handbook, the Boden Agreement, the Cooney-McCarthy Confidentiality Agreement, and the Mortgage Consultant Employment Agreement (together, the "Agreements").

113.    Defendants have and continue to harm A&N's legitimate business interests, including A&N's Confidential Information and goodwill.

<u>COUNT ONE</u>
**VIOLATION OF THE FEDERAL DEFEND TRADE SECRETS ACT**
**(AGAINST ALL DEFENDANTS)**

114.    Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

115.    A&N Confidential Information is not available to the general public and is closely guarded by A&N.  A&N keeps such information strictly confidential in order to maintain a competitive advantage over competitors.

116.    A&N Confidential Information is a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (the "DTSA") because the information is not generally known outside of A&N's business, A&N has taken reasonable measures to guard the secrecy of the information, the information is of great value to A&N and its competitors, A&N invested significant amounts of time, money and effort in developing the information, the information cannot easily be acquired or duplicated by others, and A&N continuously uses the information in its business.

117.    In particular, A&N's customer lists and customer contact information, among other information in Defendants' possession, is a trade secret under the DTSA.  (*See* 18 U.S.C. § 1839(3).)

118.    A&N took reasonable efforts to maintain the secrecy of A&N's Confidential Information, including the documents downloaded and shared by Boden, Calumet, and Cooney-McCarthy, by enacting and disseminating policies protecting A&N's Confidential Information,

utilizing the Agreements to make sure that its employees protected A&N Confidential Information, requiring passwords to be used on its computers, and utilizing software to protect and control A&N Confidential Information, among other ways.

119. Boden and Cooney-McCarthy were contractually obligated under the Agreements to return A&N Confidential Information to A&N immediately upon termination of their employment at A&N.

120. Instead of complying with their duties and obligations, Boden and Cooney-McCarthy intentionally downloaded data including A&N Confidential Information from A&N for their use at CMG. At the time Boden and Cooney-McCarthy misappropriated A&N Confidential Information, they knew that they were using improper means to acquire A&N Confidential Information in violation of the Agreements they had entered with A&N.

121. Boden and Cooney-McCarthy ignored, and continue to ignore, their contractual and legal obligations by continuing to possess A&N Confidential Information, using A&N Confidential Information to unfairly compete with A&N, and providing A&N Confidential Information to third parties—including but not limited to CMG and Select—who are not authorized to receive, possess, or access A&N Confidential Information.

122. Unless restrained, Boden and Cooney-McCarthy will continue to use, divulge, disclose, acquire, and/or otherwise misappropriate A&N Confidential Information.

123. Further, CMG and Select knew that Boden and Cooney-McCarthy stole A&N Confidential Information.

124. CMG and Select knew that their employees and agents could not possess or use A&N Confidential Information.

125.   CMG and Select received and used A&N Confidential Information and are continuing to use the stolen confidential information.

126.   CMG and Select are harming the value of A&N Confidential Information and A&N by continuing to possess and/or use the Confidential Information.

127.   Actual or threatened misappropriation of trade secrets may be enjoined under the DTSA.

128.   It is axiomatic that if Boden, Cooney-McCarthy, CMG, and Select are actively using A&N Confidential Information, then Boden, Cooney-McCarthy, CMG, and Select have no intention of complying with the DTSA.

129.   Consequently, Boden, Cooney-McCarthy, CMG, and Select's actions constitute the actual and/or threatened misuse of A&N Confidential Information and trade secrets.

130.   Injunctive relief against Boden, Cooney-McCarthy, CMG, and Select is therefore appropriate.

131.   Naturally then, A&N requests an order enjoining Boden, Cooney-McCarthy, CMG, and Select from using, possessing or accessing A&N Confidential Information and from disclosing A&N Confidential Information to anyone not authorized to receive the Confidential Information.

132.   A&N further requests an order requiring Boden, Cooney-McCarthy, CMG, and Select to return any and all A&N Confidential Information to A&N.

133.   Finally, Boden, Cooney-McCarthy, CMG, and Select's misappropriation of A&N Confidential Information has been willful and malicious, and A&N has incurred significant damages as a result of Boden, Cooney-McCarthy, CMG, and Select's misappropriation.

134.   Boden, Cooney-McCarthy, CMG, and Select's actions have further damaged A&N Confidential Information, good will, reputation, and legitimate business interests.

135. A&N is therefore entitled to recover not only compensatory damages in an amount to be determined at trial (and over $75,0000), but also punitive damages and attorneys' fees resulting from Boden, Cooney-McCarthy, CMG, and Select's wrongful misappropriation of A&N Confidential Information.

## COUNT TWO
## VIOLATION OF THE ILLINOIS TRADE SECRETS ACT
### (AGAINST ALL DEFENDANTS)

136. Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

137. During the course of their relationship with A&N, Boden and Cooney-McCarthy were exposed to substantial amounts of A&N Confidential Information.

138. This information is not available to the public and is closely guarded by A&N. A&N keeps this information strictly confidential in order to maintain a competitive advantage over its competitors, including CMG and Select.

139. This information is considered a trade secret under the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065/1 *et seq.*, because A&N derives independent economic value from the information not being generally known to the public, the information is not readily ascertainable by proper means by other persons who could obtain economic value from its disclosure or use, and the information is the subject of reasonable efforts to maintain its secrecy.

140. The economic value of A&N Confidential Information that Boden and Conney-McCarthy had access to and misappropriated is in excess of $1,000,000.

141. Defendants misappropriated A&N's Confidential Information trade secrets beginning in May 2023.

142. Based upon information and belief, Defendants also engaged in other acts of misappropriation that will be revealed through discovery.

143.    Injunctive relief is therefore appropiate, and A&N requests that this Court enter an order enjoining Defendants from using, possessing, or accessing any A&N Confidential Information and from disclosing A&N Confidential Information to anyone not authorized to receive the Confidential Infromation.

144.    A&N also requests that this Court enter an order requiring Defendants to return any and all A&N Confidential Information in their possession, custody or control.

145.    A&N has incurred significant damages as a result of Defendants' misappropriation of A&N Confidential Information.

146.    For example, A&N has lost several customers due to Defendants' misappropriation of A&N Confidential Information.

147.    Defendants' actions have also damaged A&N's goodwill, reputation, and legitimate business interests.  A&N's damages, described above, are well in excess of $75,000.00, and A&N seeks monetary and economic damages provided by 765 ILCS 1065/1 *et seq*.

148.    Finally, Defendants misappropriation of A&N's Confidential Information has been willful and malicious.  As a result, A&N is entitled to recover its attorneys' fees from Defendants.

### COUNT THREE
### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (AGAINST ALL DEFENDANTS)

149.    Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

150.    A&N maintained ongoing business relationships with the A&N customers whose business Boden, Cooney-McCarthy, CMG, and Select wrongfully solicited and/or obtained.

151.    CMG and Select had knowledge of A&N's business relationships with its customers.

152.    Boden, Cooney-McCarthy, CMG, and Select intentionally and maliciously interfered with A&N's business relationships by making false, disparaging statements about A&N

to its customers and by using and misappropriating A&N Confidential Information to enter into relationships with A&N customers.

153. By acting in the manner described above, Boden, Cooney-McCarthy, CMG, and Select acted without privilege or legal justification.

154. By acting in the manner described above, Boden, Cooney-McCarthy, CMG, and Select acted purposefully, with malice, and with the intent to financially harm A&N.

155. Boden, Cooney-McCarthy, CMG, and Select's interference has caused injury to A&N's business relationships as some of its customers have left A&N for CMG and Select.

156. As a result of Boden, Cooney-McCarthy, CMG, and Select's willful and wrongful conduct, A&N has been damaged in an amount to be determined at trial, but in excess of $75,000. Accordingly, A&N is entitled to compensatory and punitive damages in an amount to be determined at trial.

## COUNT FOUR
## UNFAIR COMPETITION
## (AGAINST ALL DEFENDANTS)

157. Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

158. Boden, Cooney-McCarthy, CMG, and Select's use of A&N Confidential Information, including but not limited to customer lists, customer contacts, and customer mortgage information, is conduct which creates a likelihood of confusion or misunderstanding for A&N's customers.

159. Boden, Cooney-McCarthy, CMG, and Select's use of A&N Confidential Information, including but not limited to customer lists, customer contacts, and customer mortgage information, further causes confusion or misunderstanding as to affiliation, connection, or association of Boden and Cooney-McCarthy, as prior A&N employees, with CMG and Select.

160.    Boden, Cooney-McCarthy, CMG, and Select intended for A&N customers and potential customers to rely on Boden, Cooney-McCarthy, CMG, and Select's deception.

161.    Boden, Cooney-McCarthy, CMG, and Select's conduct as alleged herein constitutes unfair competition under Illinois common law.

162.    Boden, Cooney-McCarthy, CMG, and Select acted in willful, deliberate, and intentional disregard of A&N's rights.

163.    As a direct and proximate result of Boden, Cooney-McCarthy, CMG, and Select's unfair competition, A&N has suffered irreparable harm, for which it has no adequate remedy at law, and will continue to suffer such irreparable injury unless and until Defendants' unfair competition is enjoined by this Court.

164.    Accordingly, A&N requests that this Court enter an order enjoining Boden, Cooney-McCarthy, CMG, and Select from engaging in any acts of unfair competition with A&N.

165.    A&N is further entitled to recover damages in an amount to be determined at trial, resulting from Boden, Cooney-McCarthy, CMG, and Select's willful unfair competition in violation of A&N's rights.

**COUNT FIVE**
**REPLEVIN**
**(AGAINST ALL DEFENDANTS)**

166.    Plaintiff incorporates by reference each allegation above as if fully rewritten herein.

167.    Boden, Cooney-McCarthy, CMG, and Select are currently in possession of A&N Confidential Information and property.

168.    Boden, Cooney-McCarthy, CMG, and Select do not have any lawful justification to be in possession of A&N Confidential Information.

169.    A&N is the rightful owner of the aforementioned Confidential Information and is entitled to the return of the A&N Confidential Information being wrongfully withheld by Boden,

Cooney-McCarthy, CMG, and Select. In other words, Boden, Cooney-McCarthy, CMG, and Select's retention of A&N Confidential Information without lawful justification is a clear violation of A&N's rights.

170. A&N made it clear to Boden, Cooney-McCarthy, CMG, and Select that its continued possession of A&N Confidential Information is unauthorized and constitutes an unlawful act. A&N has also made several requests and attempts to retrieve its Confidential Information from Boden, Cooney-McCarthy, CMG, and Select.

171. Unfortunately, Boden, Cooney-McCarthy, CMG, and Select refuse to return A&N Confidential Information.

172. Accordingly, a replevin action is appropriate because A&N is being wrongfully deprived of its Confidential Information and seeks the return of its Confidential Information.

173. Consequently, A&N requests that the Court enter an order: a) granting the immediate return of its Confidential Information to A&N; b) restraining Boden, Cooney-McCarthy, CMG, and Select from further interfering with or possessing A&N Confidential Information; and c) compensating A&N for any and all damages incurred as a result of Boden, Cooney-McCarthy, CMG, and Select's unlawful possession of A&N Confidential Information (including A&N Trade Secrets).

**WHEREFORE**, Plaintiff A&N Mortgage Services, Inc. respectfully requests that this Court:

1. Enter an injunction enjoining and restraining Bradley Boden, CMG Mortgage Inc., Select Lending Services, Inc., and Kristen Cooney-McCarthy and their agents, representatives, associates, employees, and all those acting in concert or participation with Boden, CMG, Select, or Cooney-McCarthy, from:

        a.      Using, possessing, or accessing any A&N Confidential Information; and

        b.      Disclosing and/or transferring A&N Confidential Information to anyone not authorized to receive the information;

2.      Enter an injunction enjoining and restraining Bradley Boden, CMG Mortgage Inc., Select Lending Services, Inc., and Kristen Cooney-McCarthy and their agents, representatives, associates, employees, and all those acting in concert or participation with Boden, CMG, Select, or Cooney-McCarthy, from:

        a.      Using, possessing, or accessing any A&N Confidential Information; and

        b.      Disclosing and/or transferring A&N Confidential Information to anyone not authorized to receive the information;

3.      Enter an order enjoining Boden, Cooney-McCarthy, CMG, and Select from engaging in any acts of unfair competition with A&N;

4.      Enter an order requiring Boden, CMG, Select, and Cooney-McCarthy to return all A&N Confidential Information in their possession, custody, or control to A&N;

5.      Enter judgment against Boden, CMG, Select, and Cooney-McCarthy for compensatory damages in an amount to be determined at trial;

6.      Enter judgement against Boden, CMG, Select, and Cooney-McCarthy for punitive damages in an amount to be determined at trial;

7.      Award A&N the costs and expenses, including reasonable attorneys' fees, A&N incurs as a result of Boden, CMG, Select, and Cooney-McCarthy's violations of the Illinois Trade Secrets Act and Defend Trade Secrets Act; and

8.      Award A&N such other relief as the Court may deem just and proper.

Dated: July 15, 2024                    Respectfully submitted,


                                        **BENESCH,  FRIEDLANDER,  COPLAN
                                            & ARONOFF LLP**
                                        _/s/J. Scott Humphrey_
                                        J. Scott Humphrey
                                        71 South Wacker Drive, Suite 1600
                                        Chicago, IL 60606-4637
                                        Telephone: (312) 624-6420
                                        Facsimile: (312) 767-9192
                                        shumphrey@beneschlaw.com

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.